587 A.2d 1110

**Reginald Gregory BENBOW**

v.

**STATE of Maryland.**

**No. 84, Sept. Term, 1990.**

Court of Appeals of Maryland.

April 1, 1991.

John L. Kopolow, Asst. Public Defender (Stephen E. Harris, Public Defender, on brief), Baltimore, for petitioner/cross-respondent.

Kreg Paul Greer, Asst. Atty. Gen. (J. Joseph Curran, Jr., Atty. Gen., on brief) Baltimore, for respondent/cross-petitioner.

Argued before MURPHY, C.J., ELDRIDGE, RODOWSKY, McAULIFFE, CHASANOW, JJ., CHARLES E. ORTH, Jr., Judge of the Court of Appeals (Retired, Specially Assigned), LLOYD L. SIMPKINS, Judge of the First Judicial Circuit of Maryland (Retired, Specially Assigned).

CHARLES E. ORTH, Jr., Judge, Specially Assigned.

## I

A stop by a Maryland State Police trooper of a car driven by Reginald Gregory Benbow for speeding parlayed into a ten year sentence. The stop led to his arrest. The arrest led to a search of his person and car. The search led to the recovery of contraband in his possession. The contraband in his possession led to his conviction at a court trial in the Circuit Court for Baltimore County of possession of cocaine with intent to distribute. The conviction led to the imposi-

tion of a sentence of imprisonment for a term of ten years.[1] Benbow attempted to interrupt the domino effect of the stop at the point of his arrest. He claimed that his warrantless arrest was illegal and, therefore, the searches and seizures of the contraband were unreasonable, offending the constitutional guarantees.[2] He filed a motion to suppress the evidence seized by the police. We look to the hearing on the motion for the details of how the stop for speeding burgeoned into a ten year term of imprisonment.

Maryland State Police Trooper Kevin Welkner testified that on 26 November 1988, he "was working radar assignment on [route] 795 southbound ... just south of McDonogh Road" in Baltimore County. He stopped a black BMW car which was going 93 miles an hour in a 55 miles-an-hour zone. Welkner informed the driver why he was stopped and asked for the driver's operator's license and registration card. The driver said that he did not have his operator's license with him.[3] At Welkner's request, the

---

1. Benbow was found guilty of possession of cocaine with intent to distribute and simple possession of that drug. For sentencing, the court merged the possession conviction into the possession with intent to distribute conviction. He was found not guilty of possession of marijuana.

2. "The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated...." United States Const. amend. IV.

 The guarantee is applicable to the states. *Mapp v. Ohio*, 367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed.2d 1081 (1961).

 Article 26 of the Maryland Declaration of Rights declares:

 That all warrants, without oath or affirmation, to search suspected places, or to seize any person or property, are grievous and oppressive; and all general warrants to search suspected places, or to apprehend suspected persons, without naming or describing the place, or the person in special, are illegal, and ought not to be granted.

 This clause of Article 26 is in *pari materia* with the Fourth Amendment to the United States Constitution. *Merrick v. State*, 283 Md. 1, 4 n. 2, 389 A.2d 328 (1978).

3. The trooper's testimony did not disclose whether Benbow produced a registration card for the vehicle, and the record before us does not indicate that the registration card was given to the trooper.

driver accompanied Welkner to the trooper's car so the trooper could obtain further information and run "a license check." The driver "identified himself as Reginald Gregory Benbow" and supplied his date of birth. Welkner "ran a check on him through Maryland and Virginia" [4] by the name and date of birth the driver gave. "At that time it was indicated that he was suspended in Virginia." Welkner immediately "informed Benbow that he was under arrest for driving while suspended." The trooper searched Benbow on the scene and later Benbow's car at the police barracks. He found cocaine and a large sum of money on Benbow's person and cocaine and a "trace" of marijuana in the car. On cross-examination, defense counsel made no inquiry about the events leading to the arrest except to ask the year, model, and color of Benbow's car.

Benbow testified in his own behalf. We summarize his testimony. He was driving a black BMW on 26 November 1988 and was stopped by the police. The trooper asked for his operator's license and registration card. He told the trooper that he had a valid Maryland driver's license, but had lost the license card. A certified copy of his Maryland Department of Transportation, Motor Vehicle Administration, driving record was admitted in evidence without objection. *See* Appendix A, *infra*. Benbow was sitting in the police car when Welkner "ran a check on him through Maryland and Virginia." Benbow said that he heard the operator who called back report that the Maryland driver's license was valid. Benbow insisted that he also had a Virginia operator's license in good standing at the time he was stopped. He claimed that the information the trooper received over the radio that the Virginia license was suspended was incorrect.

---

**4.** The trooper did not explain why he made a check of Benbow's Virginia driving record. In the light of Benbow's testimony, it may well have been because Benbow told the trooper he had a Virginia operator's license.

On cross-examination, Benbow verified that he did not have any operator's license in his possession when he was stopped—"I had lost them." A certified copy of Benbow's Virginia driving record was admitted in evidence upon proffer by the State to counter Benbow's assertion that his Virginia license was not suspended. *See* Appendix B, *infra.*

## II

## A

### *The Maryland License*

Benbow's Maryland driving record shows that he enjoyed a valid Maryland operator's license at the time of his arrest. Thus, the information that Benbow alleged he heard the dispatcher impart to the trooper was, in fact, correct. At the hearing, the trooper made no mention of any information he had received concerning the status of Benbow's Maryland driving privilege nor was he asked about it. If the State had wished to rebut Benbow's assertion that the trooper had been told that Benbow had a valid Maryland license, it could have recalled the trooper to the stand to say, if he could, that the dispatcher did not inform him that Benbow had a valid Maryland license or that, if the dispatcher did say it, the trooper did not hear it. In that event, the judge need not have believed Benbow, but, as the record stands here, Benbow's testimony was totally unrebutted and unrefuted. Benbow's version was not inconsistent with what the trooper said and was consistent with the Motor Vehicle Administration's record received in evidence. The judge neither expressly nor impliedly rejected Benbow's testimony on the matter; the judge simply did not address it. On this state of the record, we believe that we must treat Benbow's version as being accepted, that is, that the trooper had been informed before the arrest that Benbow was the holder of a valid Maryland license. As we read the arguments of the prosecutor, the State proceeded on the basis that Benbow's version was true.

B

*The Virginia License*

The State interprets the Virginia record as establishing that Benbow did not have a valid operator's license in that state at the time of his arrest. Certainly, it sets out that as of 2 March 1989 Benbow's driver license status was "not licensed—eligible." It also shows that on 7 October 1987 there was a "suspension" for a "term" ending either 14 or 15 April 1988 for failure to pay a fine. But then it indicates that Benbow had not paid the fine until 8 February 1989, at which time "contl" ended by compliance with an order which had been mailed to him. Benbow averred that his license had been reinstated on 14 April 1988 when the term of suspension expired. He stated that an officer who arrived on the scene of his arrest knew this because that officer advised him how to pay the outstanding fine and get back his license, and that he had paid it before his arrest. That officer did not testify on the matter.

C

As we have stated, the trial judge did not resolve the question of the status of Benbow's license at the time of the arrest. The judge declared that the issue was not whether Benbow's operator's license was suspended. "That really," the judge asserted, "is not the crucial element." It was the judge's view that "[t]he crucial fact is whether or not the trooper had probable cause to arrest. The trooper may be wrong ultimately but the question is, was there probable cause to arrest." The judge observed the circumstances facing the trooper were that he has

> got a guy going 93 in a 55, guy who says I do not have my license. He calls and Virginia says this guy is suspended, is it probable, reasonable for that Trooper to ... think that the man is breaking the law in Maryland? I think he has probable cause to believe that the man is

breaking the law, whether or not [the] man is or is not[,] so, therefore, the arrest is legal.

The judge denied the motion to suppress.

As we construe the judge's ruling, he did not question that the trooper was told that Benbow had a valid Maryland license. Despite that, however, the judge believed that, because the trooper had been informed that Benbow's license to drive in Virginia had been suspended, even though that information may have been incorrect, the arrest was legal as based on probable cause. Thus, the judge reasoned, the search and seizure incident to the arrest was reasonable, and the contraband and evidence recovered was admissible. The judge was wrong.

Lacking a factual finding by the trial judge as to the status of Benbow's privilege to operate a motor vehicle under the authority of Virginia, we assume, for the purpose of decision, a scenario which is most against Benbow's interests, namely, that the information received by the trooper was correct—his Virginia license was not in good standing.

### III

Of course, as the trial judge stated, the trooper had "probable cause to believe that [Benbow] was breaking the law." Benbow was clearly in violation of the law—he was driving 93 miles an hour in a 55 miles-per-hour zone. Maryland Code (1977, 1987 Repl.Vol.) § 21–801(a) and § 21–801.1 of the Transportation Article (TR) proscribe such conduct, and TR 27–101 makes a violation a crime.[5] The trooper had the duty, as well as the authority, to stop Benbow when the radar screening disclosed that he was driving in excess of the maximum allowable speed. But Benbow's speeding did not give the trooper the authority to arrest, either under the

---

**5.** Hereinafter, section citations are to the Transportation Article of the Maryland Code (1977, 1987 Repl.Vol.) unless otherwise indicated.

common law or by statute.[6] The validity *vel non* of Benbow's arrest is the heart of this appeal, for on it depended the legality of the search and and the admissibility of the items seized. We said in *Ricks v. State*, 322 Md. 183, 188, 586 A.2d 740 (1991):

> The Fourth Amendment protects individuals from unreasonable searches and seizures. A warrantless search or seizure is *per se* unreasonable, unless the police can show that it falls within one of a carefully defined set of exceptions. *Gamble v. State*, 318 Md. 120, 123, 567 A.2d 95 (1989); *Stackhouse v. State*, 298 Md. 203, 209, 468 A.2d 333 (1983); *Howell v. State*, 271 Md. 378, 379, 318 A.2d 189 (1974). A search incident to a valid arrest is one of the limited exceptions to the warrant requirement. *Chimel v. California, supra* [395 U.S. 752, 89 S.Ct. 2034, 23 L.Ed.2d 685 (1969)]; *Colvin v. State*, 299 Md. 88, 98, 472 A.2d 953, *cert. denied*, 469 U.S. 873 [105 S.Ct. 226, 83 L.Ed.2d 155] (1984).

The power of a police officer to make a warrantless arrest for a violation of the Maryland Vehicle Law is precisely spelled out in § 26–202 of the Transportation Article. *See* Appendix C, *infra.* Speeding is not an arrestable offense. For speeding, the power of a police officer does not extend beyond the issuance of a citation. Section 26–201(a)(1) gives a police officer the authority to *charge* a person with a violation of the Maryland Vehicle Law "if the officer has probable cause to believe that the person has committed or is committing the violation." Subsection (b), however, commands, "A police officer who charges a person under this section shall issue a written traffic citation to the person charged."

Benbow was also in violation of the Maryland Vehicle Law in that he did not have his license with him contrary to § 16–112(b). And, of course, he was unable to display his license upon demand by the trooper as required by

---

**6.** For the statutory authority of a police officer to make a warrantless arrest, *see* Maryland Code (1957, 1987 Repl.Vol.) Art. 27, § 594B, which is, in large part, reflective of the common law.

§ 16–112(a), (b), and (c). But, these violations do not carry the power to arrest. In any event, as we have seen, the trooper did not arrest Benbow for these violations. Benbow was immediately placed under arrest when the trooper received information that Benbow's Virginia license was suspended. The arrest, the trooper told Benbow, was "for driving while suspended."

At the time Benbow was arrested, § 16–303 prohibited a person from driving in this State while "his license or privilege to drive is refused in this State or any other state," subsection (a); or while the status of his license in any other state is "canceled," subsection (e); or "suspended," subsection (f); or "revoked," subsection (g). We have indicated that we shall proceed to decision on the assumption, *arguendo*, that any driving privilege Virginia may have issued Benbow was not in good standing at the time of his arrest. The State suggests that an arrest for violation of the provisions of § 16–303 is authorized by § 26–202(a)(3)(iv), which empowers a police officer to arrest a person when the officer has probable cause to believe that the person is "driving ... a motor vehicle while the driver's license or privilege to drive is suspended or revoked." The flaw in this notion is that Benbow had a Maryland license in good standing.

> When issued and signed, a driver's license authorizes the licensee to drive any vehicle of the type or class specified on it, subject to any restrictions endorsed on the license.

Section 16–111(d)(2). There is no suggestion that Benbow's license had not been issued pursuant to § 16–111 and signed by him, or that it did not cover the type of vehicle he was driving or that it was subject to any restrictions. We do not construe the laws of Maryland as prohibiting a person from driving on Maryland's roads under color of a valid Maryland license because a license in another state had been refused, canceled, suspended, or revoked. We believe, under the circumstances here, that the prohibitions of § 16–303 are applicable in the event the driver's privilege to

operate a motor vehicle is dependent only on a license issued by another state and the license had been rendered invalid by that state. When a driver holds a Maryland license in good standing, § 16–111(d)(2) prevails, regardless of the status of a license issued to him in another state. We have discovered nothing in the language or the legislative history of the Maryland Vehicle Act to the contrary.

■ We note that § 16–111(e)(2) prescribed, "Before issuing a license, the [Motor Vehicle] Administration *may* require the applicant to surrender any other license issued to him by any jurisdiction." (Emphasis added.) The record before us does not disclose the history of the issuance of Benbow's Maryland license. In any event, it appears that if, in fact, Benbow held a Virginia license at the time he was issued a license by Maryland, he had not been required to surrender the Virginia license.[7] In the circumstances, even if Benbow possessed a license in Maryland and a license in Virginia at the same time, that would not furnish proper reason to arrest him.

The State also suggests that Benbow's arrest was legal as authorized by § 26–202(a)(2)(i), which grants a police officer the power to arrest a person for a violation of the

---

7. Acts 1989, ch. 291 created a special new driver's license called the "Commercial Driver's License." The scheme was adopted to implement federal regulations designed to improve highway safety, specifically relating to trucks and large, heavy vehicles. To accomplish its purpose, the bill made quite a few changes to the Transportation Article. In TR 16–111(e)(2), "shall" was substituted for "may."

The legislative history shows that this change was part of the original bill as it was proposed. It was borrowed (although not verbatim) from the federal regulation that the statute implements, The Commercial Motor Vehicle Safety Act of 1986, 49 U.S.C.App. § 2701 et seq., § 12002 et seq., "Limitation on Number of Driver's Licenses."

Making the surrender of all other licenses mandatory is one way in which licensing and testing standards were strengthened, in accord with one of the primary purposes of both the federal regulations and the Maryland statute. Until this change, drivers could obtain a second or subsequent license from another jurisdiction to circumvent a bad driving record in the home state. Unless the stopping officer had a specific reason to suspect that the driver was licensed in another state, the bad record or the suspension would go unnoticed.

Maryland Vehicle Law if the person has committed or is committing the violation within the view or presence of the officer and "does not furnish satisfactory evidence of identity...." The State links this provision to the failure of Benbow to display his Maryland license upon the officer's command pursuant to § 16–112(a), (b), and (c). The State posits, as we understand its position, that "satisfactory evidence of identity" cannot be achieved in the absence of the display of a license when commanded by a police officer. This argument is indeed strained. There is nothing in the plain language of the section to support such a notion, nor is there any basis to find that such was the intent of the Legislature. The fact is that Benbow's identity was never in question. He gave what proved to be his correct name and date of birth, and Benbow's assertion that a trooper who arrived on the scene knew him personally was never challenged. It is obvious that the State cannot hang the legality of the arrest on the lack of satisfactory proof of Benbow's identity.

The inevitable conclusion is that Benbow's warrantless arrest was illegal. Therefore, the arrest did not justify the search, and the search offended the Fourth Amendment as unreasonable. The exclusionary rule then came into play to bar the fruits of the search. Thus, the trial court erred in denying the motion to suppress the contraband and evidence seized, and the Court of Special Appeals erred in affirming the judgment of the trial court, which was based upon convictions dependent on the items seized. *Benbow v. State*, No. 1367, September Term, 1989, filed 24 April 1990, unreported. On our review of the judgment of the Court of Special Appeals, which is before us upon our grant of Benbow's petition for a writ of certiorari, and the State's conditional cross-petition, we reverse the judgment of the Court of Special Appeals.

JUDGMENT OF THE COURT OF SPECIAL APPEALS REVERSED;

CASE REMANDED TO THE COURT OF SPECIAL APPEALS WITH DIRECTION TO REVERSE THE JUDG-

MENT OF THE CIRCUIT COURT FOR BALTIMORE COUNTY AND TO REMAND THE CASE TO THAT COURT FOR A NEW TRIAL;

COSTS IN THIS COURT AND THE COURT OF SPECIAL APPEALS TO BE PAID BY BALTIMORE COUNTY.

## APPENDIX A

**Maryland Department of Transportation**　　　　　1640530

MOTOR VEHICLE ADMINISTRATION
6601 RITCHIE HIGHWAY N E
GLEN BURNIE, MARYLAND, 21062

As Motor Vehicle Administrator for the State of Maryland and by virtue of the authority vested in me under the Transportation Article, Motor Vehicle Law I do hereby certify that the following is a true copy taken from the original now on file and part of the records of this Administration

01640530

| SOUNDEX NUMBER | NAME AND ADDRESS | | HEIGHT | WEIGHT | RACE | SEX | BIRTH DATE | RESTRICTIONS | PAGE |
|---|---|---|---|---|---|---|---|---|---|
| B 510-734-288-146 REGINALD GREGORY BENBOW 3213 INGLESIDE AVE BALTIMORE MD 21215 | | | 5-07 | 175 | 1 | M | 02-25-63 | | 1 |
| | | TYPE OF LICENSE ISSUED | CLASS D | | EXPIRATION DATE 02-25-92 | | | PAID | |

CURRENT LICENSE STATUS
VALID
OR 60 (1-87)　　SPECIAL →
RESTRICTIONS

| CITATION DATE | CONVICTION DATE | SUMMARY | DESCRIPTION | POINTS |
|---|---|---|---|---|
| 06-22-87 | | FLORIDA | RECIPROCITY-FAILURE TO COMPLY SUSPENSION LETTER MAILED | |
| 07-10-87 | | FLORIDA | SUSPENDED-VIOLATED RECIPROCITY AGREEMENT | |
| 05-11-87 | 07-08-87 | E159281 | EXCEEDING MAXIMUM SPEED LIMIT BY 1-9 MPH | 01 |
| 07-20-87 | | FL 071087 | RECIPROCITY SUSPENSION WITHDRAWN | |
| 12-18-87 | | VIRGINIA | RECIPROCITY-FAILURE TO COMPLY SUSPENSION LETTER MAILED | |
| 01-11-88 | | VIRGINIA | SUSPENDED-VIOLATED RECIPROCITY AGREEMENT | |
| 04-12-88 | | VA 011188 | RECIPROCITY SUSPENSION WITHDRAWN | |
| 07-15-88 | | F074709 6005 | DISTRICT COURT FAIL TO APPEAR SUSPENSION LETTER MAILED | |
| 04-24-88 | 07-28-88 | F170489 | DRIVING UNREGISTERED VEH/ALLOW UNREGISTERED VEH TO BE DRIVEN | 01 |
| 08-08-88 | | F074709 6005 | DISTRICT COURT-FAIL TO APPEAR SUSPENDED | |
| 04-11-88 | 08-03-88 | E821331 | EXCEEDING MAXIMUM SPEED LIMIT BY 10 MPH | 02 |
| 08-17-88 08-09-88 | | F074709 6005 | F SYS-WARNING LETTER MAILED DISTRICT COURT FAIL TO APPEAR SUSPENSION WITHDRAWN | |
| 03-10-88 | 08-05-88 | F074709 | EXCEEDING MAXIMUM SPEED LIMIT BY 10 MPH | 02 |
| 07-28-88 | 09-01-88 | G303042 | DRIVE MOTOR VEHICLE IN A NEGLIGENT MANNER | 01 |
| 09-27-88 | | CONV 101388 | HEARING SCHEDULED | |
| 06-23-88 | 09-28-88 | E948032 | EXCEEDING MAXIMUM SPEED LIMIT BY 10 MPH | 02 |
| 11-04-88 01-25-89 | | RESCH 112388 | HEARING SCHEDULED CANCELLATION LETTER MAILED | |
| 02-15-89 | | C/FS 030189 | HEARING SCHEDULED | |
| 03-01-89 | | 9PTS ATL | HEARING-REPRIMAND | |

RECORD END　TOTAL CURRENT POINTS　09

## APPENDIX B

```
MOTOR VEHICLES, VIRGINIA 07415

CONTL NU ACCOUNT NO REJUESTED BY DATE FUR

TR310484 MARYLAND S POLICE CHECKS 03/02/89
TATE POL

RC NO. 305494-00728-191768 DEMERITS 4 PG 1 UF 1
OL NO. 005494-00725-191768 SAFE DRIVING PTS 0
 BALANCE MINUS 4

BENBOH,REGINALD,GREGORY BIRTH DATE 02/25/63 SEX M
3213 INGLESIDE AVE HGT 175 HGT 5-07 EYES BR HAIR BK
BALTIMORE,MD 21215 MARYLAND

DRIVER LIC STATUS - NOT LICENSED, ELIGIBLE
CHAUFFEUR ENDR STATUS - NOT LICENSED, ELIGIBLE

CONVICTION 07/20/87 OFF 06/08/87 DIS CT PR HILL CO
 UPERATE VEH.WITH DEVICE TO DETECT MICROWAVES

CONVICTION 07/20/87 OFF 06/08/87 DIS CT PR HILL CO
 DEMERITS 4 SPEEDING 10-19 MPH ABOVE SPEED LIMIT

FOREIGN LIC LIC NO 8510734288146 MD

SUSPENSION 10/07/87 TERM 04/15/88 FAIL TO PAY FINE DMV ORDER
 CONVICTION 07/20/87 DIS CT PR HILL CO CONTL ENDS 02/09/89
 ORDER MAILED - ACCEPTED BY ADDRESSEE
 COMPLIED WITH THIS ORDER 02/08/89

SUSPENSION 10/07/87 TERM 04/14/88 FAIL TO PAY FINE DMV ORDER
 CONVICTION 07/20/87 DIS CT PR HILL CO CONTL ENDS 02/09/89
 ORDER MAILED - ACCEPTED BY ADDRESSEE
 COMPLIED WITH THIS ORDER 02/08/89
```

## APPENDIX C

Maryland Code (1977, 1987 Repl.Vol.) § 26–202 of the Transportation Article, provides:

(a) *In general.*—A police officer may arrest without a warrant a person for a violation of the Maryland Vehicle Law, including any rule or regulation adopted under it, or for a violation of any traffic law or ordinance of any local authority of this State, if:

(1) The person has committed or is committing the violation within the view or presence of the officer, and the violation is any of the following:

(i) A violation of § 21–1411 or § 22–409 of this article, relating to vehicles transporting hazardous materials; or

(ii) A violation of § 24–111 or § 24–111.1 of this article, relating to the failure or refusal to submit a vehicle to a weighing or to remove excess weight from it;

(2) The person has committed or is committing the violation within the view or presence of the officer, and either:

(i) The person does not furnish satisfactory evidence of identity; or

(ii) The officer has reasonable grounds to believe that the person will disregard a traffic citation;

(3) The officer has probable cause to believe that the person has committed the violation, and the violation is any of the following offenses:

(i) Driving or attempting to drive while intoxicated, while under the influence of alcohol, or in violation of an alcohol restriction;

(ii) Driving or attempting to drive while under the influence of any drug, any combination of drugs, or any combination of drugs and alcohol or while under the influence of any controlled dangerous substance;

(iii) Failure to stop, give information, or render reasonable assistance, as required by §§ 20–102 and 20–104 of this article, in the event of an accident resulting in bodily injury to or death of any person;

(iv) Driving or attempting to drive a motor vehicle while the driver's license or privilege to drive is suspended or revoked;

(v) Failure to stop or give information, as required by §§ 20–103 through 20–105 of this article, in the event of an accident resulting in damage to a vehicle or other property;

(vi) Any offense that caused or contributed to an accident resulting in bodily injury to or death of any person; or

(vii) Fleeing or attempting to elude a police officer;

(4) The person is a nonresident and the officer has probable cause to believe that:

(i) The person has committed the violation; and

(ii) The violation contributed to an accident; or

(5) The officer has probable cause to believe that the person has committed the violation, and, subject to the procedures set forth in § 26–203 of this subtitle, the person is issued a traffic citation and refuses to acknowledge its receipt by signature.

Subsection (b) prescribes the manner of arrest that "[a]n arrest under this section shall be made in the same manner as, and without more force than, in misdemeanor cases." Subsection (c) requires that the person arrested "be taken without unnecessary delay before a District Court commissioner ... unless the arresting officer in his discretion releases the individual upon the individual's written promise to appear for trial."