# United States Court of Appeals
## For the Eighth Circuit

_____

No. 14-1751

_____

United States of America

*Plaintiff - Appellee*

v.

Henry Lee Williams

*Defendant - Appellant*

_____

Appeal from United States District Court
for the Western District of Missouri - Kansas City

_____

Submitted: November 14, 2014
Filed: February 5, 2015

_____

Before BYE, SHEPHERD, and KELLY, Circuit Judges.

_____

KELLY, Circuit Judge.

Henry Williams was charged with being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1) (Count I); possessing a stolen firearm in violation of 18 U.S.C. § 922(j) (Count II); and stealing a firearm from a licensed firearms dealer in violation of 18 U.S.C. § 922(u) (Count III). Williams moved to suppress the

AK-47 rifle seized during a warrantless search of his vehicle. After the district court[1] denied his motion to suppress, Williams entered a conditional guilty plea to Counts I and III of the Indictment and was sentenced to 15 years' imprisonment. Pursuant to his conditional plea agreement, Williams appeals the district court's denial of his motion to suppress evidence. Having jurisdiction under 28 U.S.C. § 1291, we affirm the judgment of the district court.

## I. Background

On December 19, 2012, Officer Alan Loftis of the Raytown, Missouri, Police Department received a report of a theft at Game Stop, an electronics retailer. Being less than a block away, he responded immediately to the call. As he was pulling into the parking lot of the store, there were two people pointing at a dark-colored Cadillac. Officer Loftis pursued the car, which did not stop until the siren of the patrol car had been activated. During the pursuit, radio dispatch informed Officer Loftis that the suspect was wearing a Pittsburgh Steelers jacket and had stolen an iPad wrapped in bubble wrap.

Officer Loftis pulled the Cadillac over to the side of the street and when he approached the car, he noticed that the driver was wearing a Steelers jacket. The driver, Williams, initially refused to exit the car and asked why he had been stopped. A second officer arrived at the scene, and together they again asked Williams to get out of his vehicle. Williams eventually obeyed and locked the doors behind him after exiting.

In response to questioning, Williams denied any knowledge of, or involvement in, the Game Stop theft, though he admitted he had recently been at the store. The

---

[1] The Honorable Dean Whipple, United States District Judge for the Western District of Missouri.

rear driver's side window of the car was partially down, and Officer Loftis looked into the car using a flashlight. He noticed some bubble wrap sticking out in the console area between the two front seats. After unlocking the car through the open window, the officer removed the bubble-wrapped item, which turned out to be the stolen iPad.

Officer Loftis took the iPad to the rear of the vehicle, laid it on the trunk, and told Williams that he was under arrest. At that moment, Williams reached out and grabbed the iPad, tucking it under his chest as he leaned over the car. Williams refused verbal commands and resisted the officers' attempts to handcuff him. The officers then used physical force, including knee strikes, to force Williams to give up the iPad and to place him in handcuffs. A third officer drove past the scene of the arrest with the Game Stop manager in his patrol car. The manager identified Williams as the man who stole the iPad.

Officer Loftis then ordered Williams's car to be towed. The Raytown Police Department Tow Policy on "Custodial Arrest" provides: "Following a custodial arrest, the officer will determine *if* the arrestee's vehicle is to be impounded. If it is, the officer will . . . [p]erform an inventory of the vehicle, including the glove compartment, any unlocked containers, and the trunk." (Emphasis added). If an officer decides not to have the vehicle towed, "the officer may release the vehicle to another licensed driver at the scene with the owner/operators [sic] approval, or shall complete an "AUTHORIZATION NOT TO TOW" form to be signed by the owner/operator prior to the vehicle being legally parked and locked near the scene of the arrest." Further, "[v]ehicles will not be towed as a punitive action."

Officer Loftis later provided several explanations for his determination that Williams's car should be towed. Because they were in a "high crime" area, he "didn't want to leave a Cadillac on the side of the road regardless of condition." The officer also explained that Raytown requires a $500 bond for theft, so Williams may not have

been out of jail to retrieve the car for some time. As Williams had just resisted arrest, the officer did not want to release him from handcuffs again to sign an "authorization not to tow" form. Williams was alone, and he was the only registered owner of the car, so there was no other "licensed driver at the scene" to whom the vehicle could be released. The officer testified at the suppression hearing that he did not have the car towed as a punitive action, nor was he expecting to find additional evidence: "We were only dealing with the Game Stop. The car was relatively clear of items. There was nothing to lead me to believe that he had been on some kind of crime spree or anything like that. We only received a call from Game Stop on one item."

After a tow truck had been ordered, the officers at the scene began to inventory the vehicle, pursuant to department policy. In the trunk of the car, Officer Scott Gillespie discovered a duffel bag that contained a loaded AK-47 rifle. A run of the serial numbers revealed that the firearm had been stolen. Williams later admitted in a written statement, provided after he had been read the Miranda warnings, that he had stolen the firearm.

The Raytown Police Department Tow Policy requires an inventory of the contents of a towed vehicle. Items of value are to be placed in the station property room, while "[p]roperty of negligible value will be inventoried and listed on the Tow-In report. If possible, all negligible property should be secured in the trunk of the vehicle." Officer Loftis later testified that there may have been loose items left in the vehicle that were not listed in the Tow-In report inventory list. He explained that it was typical for him not to list items of lower value.

Williams moved to suppress evidence of the rifle, arguing that the warrantless search of his vehicle violated his rights under the Fourth Amendment. Following a hearing, the district court denied his motion and Williams now appeals.

## II. Discussion

A mixed standard of review applies to the denial of a motion to suppress evidence. "We review the district court's findings of fact under the clearly erroneous standard, and the ultimate conclusion of whether the Fourth Amendment was violated is subject to *de novo* review." United States v. Stephenson, 924 F.2d 753, 758 (8th Cir. 1991).

On appeal, Williams does not contest that officers had probable cause to stop and arrest him for the theft of the iPad. He asserts only that they unlawfully searched his vehicle prior to having it towed. He argues first that the police officers should have left the vehicle parked on the street, and second that the officers' failure to inventory all of the loose items in the car was a violation of procedure and rendered the search invalid.

### A. Decision to impound the car

It is "well-settled" law that "a police officer, after lawfully taking custody of an automobile, may conduct a warrantless inventory search of the property to secure and protect vehicles and their contents within police custody." United States v. Rehkop, 96 F.3d 301, 305 (8th Cir. 1996). These searches must comply with "standardized police procedures." United States v. Mayfield, 161 F.3d 1143, 1145 (8th Cir. 1998). Williams does not contest that the Raytown Police Department Tow Policy lawfully requires an inventory search before vehicles may be towed. Instead, he argues that Officer Loftis's original decision to impound his vehicle, which then led to the search, was unlawful.

The Tow Policy leaves it up to an officer's discretion whether to tow a vehicle after an arrest. "The Fourth Amendment permits exercise of such discretion . . . 'so long as that discretion is exercised according to standard criteria . . . other than

suspicion of evidence of criminal activity.'" United States v. Arrocha, 713 F.3d 1159, 1162 (8th Cir. 2013) (quoting Colorado v. Bertine, 479 U.S. 367, 375 (1987)). These standardized criteria, however, do not need to be part of the written policy itself, so long as "the officer's residual judgment is exercised based on legitimate concerns related to the purposes of an impoundment." United States v. Petty, 367 F.3d 1009, 1012 (8th Cir. 2004). "[A]n impoundment policy may allow some latitude and exercise of judgment by a police officer. . . ." Id. (internal quotations omitted).

Officer Loftis explained the reasoning behind his decision to have the car towed. He did not want to leave the Cadillac sitting on the street in a "high crime" neighborhood when he knew that the sole owner would be in jail on a $500 bond and might not be able to retrieve it for some time. This is a legitimate explanation that has nothing to do with a desire to find evidence of criminal activity. If he had decided to leave the car, then he would have needed to seek written permission from Williams, who was handcuffed after having resisted arrest. It was lawful for Officer Loftis to decide to have the car towed rather than ask Williams to contact someone to retrieve it. Arrocha, 713 F.3d at 1164 ("Nothing in the Fourth Amendment requires a police department to allow an arrested person to arrange for another person to pick up his car to avoid impoundment and inventory." (quotation omitted)).

**B. Failure to inventory loose items**

Williams additionally argues that the police officers' failure to inventory all of the loose items of minimal value in the car was a violation of procedure and rendered the search invalid. However, this court has held that "[c]ompliance with procedures merely tends to ensure the intrusion is limited to carrying out the government's caretaking function. This does not mean that inventory searches are always unreasonable when standard procedures are not followed." Mayfield, 161 F.3d at 1145 (internal citation omitted). Unless a minor deviation from procedure supports an argument that the inventory search was merely a pretext for looking for evidence,

the search will be deemed valid.  <u>Whren v. United States</u>, 517 U.S. 806, 816 (1996) (explaining that a deviation from procedures alone does not prove pretext). Williams fails to identify which loose items were not inventoried or to explain how their absence from the inventory list suggests an improper motive for the search.  The district court properly rejected this argument.

### III. Conclusion

Accordingly, we affirm the judgment of the district court.

_____