# United States Court of Appeals
## For the Eighth Circuit
_____

No. 22-2282
_____

United States of America

*Plaintiff - Appellee*

v.

Dywan Lamar Conley

*Defendant - Appellant*
_____

Appeal from United States District Court
for the District of Minnesota
_____

Submitted: February 16, 2023
Filed: June 6, 2023
_____

Before COLLOTON, BENTON, and KELLY, Circuit Judges.
_____

KELLY, Circuit Judge.

A handgun was found in Dywan Conley's jacket pocket while he was being treated in a hospital emergency room for a gunshot wound. After the district court[1] denied his motion to suppress, Conley conditionally pleaded guilty to possessing a

---

[1]The Honorable Susan Richard Nelson, United States District Judge for the District of Minnesota, adopting the report and recommendation of the Honorable Becky R. Thorson, United States Magistrate Judge for the District of Minnesota.

firearm after having been convicted of a felony. <u>See</u> 18 U.S.C. §§ 922(g)(1), 924(a)(2).[2] He appeals the district court's denial of his motion to suppress, and we affirm.

I.

In the early morning of April 15, 2021, Conley suffered a gunshot wound to his leg and asked a man to "run him to the hospital." Conley was dropped off at the emergency room of the Hennepin County Medical Center (HCMC) in downtown Minneapolis, where emergency room staff promptly placed him on a gurney and moved him to a stabilization room. Once there, medical staff discovered a bullet hole in Conley's left thigh and immediately prepared to treat what appeared to be a potentially life-threatening injury. The staff asked Conley if they could remove his clothes and shoes, explaining that they needed to assess the full extent of his injuries, but Conley refused.[3] Over the next five minutes, medical staff urged Conley to cooperate and stressed the gravity of his condition. A nurse told Conley that the bullet could have traveled to his neck, risking paralysis. And a doctor explained to him that he could be suffering from internal bleeding and needed to be treated "fast," as he was "getting closer to dying."

Conley was sitting upright on his gurney during these initial encounters. An HCMC "protection officer"—a security officer employed directly by the hospital—soon approached Conley, placed a hand on him, and attempted to guide Conley into a more recumbent position. Conley yelled in protest, kicked his feet, and tried to get off the gurney, prompting the protection officer and two of his colleagues to hold Conley down with their hands and bodies. As Conley yelled "I don't want to! No!

[2]The former 18 U.S.C. § 924(a)(2) has since been amended and recodified at § 924(a)(8).

[3]The events described here were captured by body cameras worn by law enforcement officers, who were on the scene to provide security to HCMC staff and, later, to question Conley about the incident that resulted in his gunshot wound.

No! Y'all can't make me do nothing," a nurse administered two injections of medication into his right leg.

The protection officers continued to restrain Conley while medical staff provided treatment. One of the officers, who had his elbow and forearm pressed against Conley's body, then summoned a sheriff's deputy standing nearby[4] and told the deputy that Conley was "strapped," which the deputy understood to mean that Conley was carrying a firearm. The deputy ordered medical staff to step away from the gurney, immediately began to search Conley's person, and within seconds found a handgun in Conley's jacket pocket. This discovery occurred less than two minutes after the protection officers first restrained Conley.

Conley was indicted on one count of being a felon in possession of a firearm. See 18 U.S.C. §§ 922(g)(1), 924(a)(2). He moved to suppress evidence of the handgun found in his jacket pocket, arguing that it was the fruit of an unconstitutional seizure by the HCMC protection officers. Following an evidentiary hearing, the magistrate judge recommended that Conley's motion be denied. And the district court, over Conley's objections, adopted that recommendation "in its entirety." The district court concluded that the HCMC protection officers effectuated a seizure under the Fourth Amendment when they restrained Conley to the gurney, but that the seizure was not objectively unreasonable "under the totality of [the] circumstances." The district court alternatively concluded that, even if the protection officers' seizure had been unlawful, suppressing the handgun found in Conley's jacket pocket was unwarranted because doing so "would not effectuate the exclusionary rule's purpose of deterring future" Fourth Amendment violations.

---

[4]The sheriff's deputy was on duty at HCMC that morning as part of the Hospital Sheriff's Enforcement Unit, which "works in partnership with" HCMC security "to provide a safe and secure environment for patients, visitors, and staff." The deputy had gone back to the stabilization room where Conley was being treated "to make sure that . . . the scene [was] safe."

Conley entered a conditional guilty plea, reserving his right to appeal the denial of his motion to suppress. See Fed. R. Crim. P. 11(a)(2). The district court sentenced Conley to 60 months of imprisonment followed by three years of supervised release. He now appeals.

## II.

"A mixed standard of review applies to the denial of a motion to suppress evidence." United States v. Harris, 55 F.4th 575, 580 (8th Cir. 2022) (quoting United States v. Williams, 777 F.3d 1013, 1015 (8th Cir. 2015)). We review the district court's factual findings for clear error and the "ultimate conclusion of whether the Fourth Amendment was violated" de novo. Id. (quoting Williams, 777 F.3d at 1015). "Reversal is warranted 'only if the district court's decision is unsupported by substantial evidence, based on an erroneous interpretation of applicable law, or, based on the entire record, it is clear a mistake was made.'" United States v. Stephen, 984 F.3d 625, 628 (8th Cir. 2021) (quoting United States v. Harper, 466 F.3d 634, 643 (8th Cir. 2006)). And "[w]e may affirm the district court's Fourth Amendment decision on any basis supported by the record." United States v. Harris, 747 F.3d 1013, 1016 n.3 (8th Cir. 2014).

Conley argues on appeal that because the HCMC protection officers' restraint of him in the stabilization room amounted to an unlawful seizure in violation of the Fourth Amendment, evidence of the handgun found in his jacket pocket must be suppressed under the exclusionary rule. The Fourth Amendment protects "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. amend. IV. When an unreasonable search or seizure yields incriminating evidence, the exclusionary rule, "when applicable, forbids the use of" such "improperly obtained evidence at trial." Herring v. United States, 555 U.S. 135, 139 (2009).

The government argues as a threshold matter that the Fourth Amendment does not apply to the HCMC protection officers' conduct here. But see Ferguson v. City

of Charleston, 532 U.S. 67, 76 (2001) (concluding that staff at a state hospital "are government actors, subject to the strictures of the Fourth Amendment"); Buckley v. Hennepin County, 9 F.4th 757, 761–62 (8th Cir. 2021) (applying a Fourth Amendment reasonableness standard to HCMC paramedics' placement of a patient on a "medical transport hold").  However, we need not resolve the extent to which such hospital security officers are subject to the Fourth Amendment's restrictions. Assuming that the HCMC protection officers' restraint of Conley amounted to a seizure under the Fourth Amendment, we turn to the question of whether that seizure was lawful.  Conley does not challenge the lawfulness of the search for the handgun he was carrying, which a sheriff's deputy performed immediately after learning that Conley was likely armed.  Cf. United States v. Henderson, 553 F.3d 1163, 1165 (8th Cir. 2009) (per curiam) (concluding that "exigent circumstances justified" efforts by police officers "to secure," amidst "highly volatile" circumstances, a firearm they knew to be in a defendant's house).  And whether Conley's separate constitutional right to refuse unwanted medical treatment was violated is also not before us.[5]  See Cruzan v. Dir., Mo. Dep't of Health, 497 U.S. 261, 278 (1990).  Instead, we must determine whether the approximately two-minute physical restraint of Conley that immediately preceded the discovery of the handgun in his jacket pocket was objectively unreasonable.  See Torres v. Madrid, 141 S. Ct. 989, 1003 (2021) ("The Fourth Amendment does not forbid all or even most seizures—only unreasonable ones.").

Whether a particular seizure was reasonable is "generally assessed by carefully weighing 'the nature and quality of the intrusion on the individual's Fourth Amendment interests against the importance of the governmental interests alleged

---

[5]Conley suggests in his brief that Minnesota statutes governing emergency medical holds ordered by healthcare professionals for persons with mental illness or chemical dependency have some bearing on the reasonableness of the HCMC protection officers' seizure of him in the stabilization room.  There is no indication in the record that these statutes applied to the circumstances here.  And in any event, it is well settled that state law does not "define the contours of the Fourth Amendment."  Rose v. City of Mulberry, 533 F.3d 678, 680 (8th Cir. 2008).

to justify the intrusion.'" County of Los Angeles v. Mendez, 581 U.S. 420, 427 (2017) (quoting Tennessee v. Garner, 471 U.S. 1, 8 (1985)). We recently explained that "all seizures—whether brief detentions or arrests—done for noninvestigatory purposes are governed by the Fourth Amendment's reasonableness balancing test."[6] Graham v. Barnette, 5 F.4th 872, 885 (8th Cir. 2021). Under the balancing test, "the greater the intrusion on a citizen, the greater the justification required for that intrusion to be reasonable." Id. Noninvestigatory seizures are reasonable if they are "based on specific articulable facts" and the "governmental interest" in effectuating the seizure in question "outweighs the individual's interest in being free from arbitrary government interference." Harris, 747 F.3d at 1017 (cleaned up) (quoting Samuelson v. City of New Ulm, 455 F.3d 871, 877 (8th Cir. 2006)); see Graham, 5 F.4th at 885 ("This balancing test, ever attuned to the nature and quality of the intrusion, comports with the Supreme Court's instruction that reasonableness is the touchstone of the Fourth Amendment."). A noninvestigatory seizure's "scope," moreover, must be "carefully tailored to satisfy the purpose of the initial detention." Harris, 747 F.3d at 1019.

Applying this balancing test here,[7] we conclude that the HCMC protection officers' seizure of Conley in the stabilization room was objectively reasonable

---

[6]State actors act in a noninvestigatory capacity when their conduct is "totally divorced from the detection, investigation, or acquisition of evidence relating to the violation of a criminal statute." Harris, 747 F.3d at 1017 (quoting Cady v. Dombrowski, 413 U.S. 433, 441 (1973)). Here, the district court found that the HCMC protection officers did not have "any reason to believe that Conley was involved in any illegal activity" and that they restrained him for the noninvestigatory purpose of "effectuat[ing] medical care," which neither party disputes.

[7]Conley, relying on our decision in Graham v. Barnette, argues that we should evaluate the reasonableness of his restraint under a probable cause standard. See 5 F.4th at 886. In Graham, we held that "only probable cause that a person poses an emergent danger—that is, one calling for prompt action—to herself or others can tip the scales of the Fourth Amendment's reasonableness balancing test in favor of the government when it arrests an individual for a mental-health evaluation." Id. Conley, in contrast, was subject to a two-minute restraint in the emergency room

under the circumstances. We start with "the government's interest in the officers' actions." Harris, 747 F.3d at 1018. A noninvestigatory seizure can be justified by an officer's reasonable belief "that an emergency exists requiring the officer's attention." Graham, 5 F.4th at 885; cf. Caniglia v. Strom, 141 S. Ct. 1596, 1599 (2021) (reiterating that warrantless intrusions onto private property are reasonable if there is a "need to render emergency assistance to an injured occupant or to protect an occupant from imminent injury" (cleaned up)). Here, the government underscores that the protection officers seized Conley "to allow medical staff to safely and effectively evaluate his gunshot wound and potentially render life-saving medical treatment." And the district court's factual findings establish that the officers were confronted with what appeared to be a medical emergency requiring an immediate response: Conley had a fresh gunshot wound in his thigh; medical staff worried that Conley was suffering from internal bleeding that needed immediate attention; and Conley's refusal to remove his clothes prevented medical staff from providing potentially life-saving treatment.

Additionally, once Conley became agitated on the gurney, the protection officers had a strong interest in ensuring the safety of the medical staff trying to treat him. See Graham, 5 F.4th at 885 ("[W]hen officers act in a noninvestigatory capacity, they may briefly detain an individual to ensure her safety and that of the officers or the public . . . ."). Indeed, the need to preserve a safe environment is particularly acute in a hospital emergency room, where medical professionals are expected to make quick decisions while treating patients who present with urgent medical needs. And Conley's conduct forced the protection officers to "make a split-second decision in the face of an emergency"—namely, "to either stand idly by, permitting a dangerous situation to continue uninterrupted, or act, addressing the potential danger" in order to protect medical staff. Harris, 747 F.3d at 1017. When

---

after voluntarily arriving at the hospital with a gunshot wound. And Graham itself relied on the same balancing test we apply here, concluding that under the circumstances of a mental-health arrest in a person's home, "only probable cause constitutes a sufficient 'governmental interest' to outweigh a person's 'interest in freedom.'" Id. (quoting Harris, 747 F.3d at 1017).

faced with such circumstances, "we have reasoned that officers are expected to act." Id. at 1017–18.

Weighed against these interests is Conley's "right to be free from government intrusion." Id. at 1018. But Conley voluntarily brought himself to HCMC's emergency room to seek treatment for a gunshot wound that medical staff considered potentially life-threatening. Given those circumstances, Conley should have reasonably expected the sort of intrusions that are inherent to the provision of emergency medical care, including the removal of one's clothes to facilitate treatment and—if compelled by the need to maintain a safe environment—even temporary physical restraint. Cf. Buckley, 9 F.4th at 762–63 (concluding that "[i]t was not objectively unreasonable" for HCMC paramedics to sedate a patient "who needed medical intervention" and whom the paramedics perceived to be "dangerously agitated"). To the extent Conley's reluctance to receive medical treatment factors into our reasonableness analysis, it arguably would have been unreasonable for HCMC staff to have allowed Conley to leave the emergency room without first taking steps to at least stabilize him. See id. at 762 ("[P]aramedics would face a kind of Catch-22[:] treat the [patient] or don't treat him, but face a lawsuit either way." (cleaned up) (quoting Thompson v. Cope, 900 F.3d 414, 423 (7th Cir. 2018)).

Finally, the record indicates that the "scope" of the protection officers' seizure of Conley "was carefully tailored" to address the circumstances at hand. Harris, 747 F.3d at 1019. Conley was restrained by the officers' hands and bodies only after he "kick[ed] his feet" and "attempted to get off the gurney." Cf. id. (noting that "officers' decision to handcuff" a defendant "was reasonable considering the circumstances confronting" them (cleaned up)). And that seizure lasted less than two minutes before the deputy sheriff found the handgun in Conley's jacket pocket.

Given the specific facts before us, we conclude that the HCMC protection officers' seizure of Conley in the stabilization room was not objectively unreasonable and thus did not violate Conley's rights under the Fourth Amendment.[8]

III.

We affirm the judgment of the district court.

_____

---

[8]Because we find no Fourth Amendment violation, we need not address the district court's alternative conclusion regarding the applicability of the exclusionary rule.