*Daquwan Hicks v. State of Maryland*, No. 2397, Sept. Term, 2023. Opinion by Tang, J.

**SEARCH, SEIZURE, AND ARREST – SEARCHES AND SEIZURES IN GENERAL – GROUND AND SCOPE – PARTICULAR CASES AND CONTEXTS – MOTOR VEHICLES – IMPOUNDMENT AND INVENTORY – PARTICULAR CASES IN GENERAL**

There are two requirements of the inventory search exception to the warrant requirement: 1) that the vehicle be lawfully in police custody and 2) that the inventory be done pursuant to standard police procedure.

A standard police procedure is not required to justify impoundment under the first requirement of the inventory search exception to the warrant requirement. To the extent a vehicle is impounded pursuant to a police procedure, the existence of and adherence to standardized criteria may be considered as a factor in assessing the reasonableness of a caretaking impoundment.

The officer initiated a traffic stop, discovered that the appellant's license was suspended, and towed the vehicle he was driving. The officer did not arrest the appellant, and there was no evidence that the vehicle contained evidence of a crime. Nor was there evidence that towing the vehicle served a community caretaking function. The officer explained that he towed the car because the departmental tow policy authorized him to do so when the driver commits an "arrestable offense," and that he exercised his discretion to tow to teach the appellant a lesson not to drive on a suspended license.

The trial court erred in denying the appellant's motion to suppress on the grounds that the departmental policy authorized the tow, and the officer towed based on something other than suspicion of criminal activity. The policy, as the officer understood it, gave him unfettered discretion to impound vehicles for "anything that's an arrestable offense," such as driving on a suspended license. The lack of constraints on an officer's exercise of discretion on the decision to tow is a factor that undermined the reasonableness of the impoundment.

Even if the policy adequately restricted the officer's discretion and he followed it, that does not settle the issue of whether the vehicle's impoundment was reasonable under the Fourth Amendment. The impoundment must still be justified by a community caretaking rationale, which was absent in this case. Because the officer's decision to tow the vehicle was unreasonable under the totality of the circumstances, the vehicle was not in lawful police custody when the officer searched it.

Circuit Court for Baltimore City
Case No. 123214006

REPORTED

IN THE APPELLATE COURT

OF MARYLAND

No. 2397

September Term, 2023
_____

DAQUWAN HICKS

v.

STATE OF MARYLAND
_____

Reed,
Tang,
Wright, Alexander, Jr.
    (Senior Judge, Specially Assigned),

JJ.
_____
_____

Opinion by Tang, J.
_____

Filed: December 17, 2025

Pursuant to the Maryland Uniform Electronic Legal
Materials Act (§§ 10-1601 et seq. of the State
Government Article) this document is authentic.



Gregory Hilton, Clerk

Appellant Daquwan Hicks entered a conditional plea to possession of a firearm with a nexus to a drug trafficking crime and was sentenced to seven years' incarceration with all but five years suspended. His sole contention on appeal is that the Circuit Court for Baltimore City erred in denying his motion to suppress. Specifically, he argues that the police unlawfully seized the vehicle he was driving under the inventory search exception to the warrant requirement. The State agrees, as do we. Accordingly, we shall reverse the court's order denying the motion to suppress.

## I.

## SUPPRESSION HEARING

At the suppression hearing, the State called Baltimore City Detective Mason Coursey. Detective Coursey testified that while patrolling in his car, he encountered a Jeep with a heavy tint on the front windshield and a missing Maryland plate on the front of the vehicle. The detective initiated a traffic stop. The car pulled over to the right side of the roadway. The appellant was the driver of the Jeep and the sole occupant.

The appellant provided his license and registration. After running the information, the detective learned that the appellant's driving privileges were suspended. At that point, the detective ordered a tow for the vehicle. He explained that it was "common practice" to order a tow "anytime that you stop someone for . . . driving on [a] suspended license or anything like that." He further explained that this practice is outlined in Baltimore Police Department Policy 902 (the "Policy"). The Policy was not admitted into evidence.

However, he testified that he understood the Policy to authorize a tow for "anything that's an arrestable offense."[1]

The detective did not arrest the appellant or issue him a citation. He explained that issuing a citation would adversely affect the appellant's license status.[2] Instead, he decided

---

[1] "Policy 902, Towing Procedures" is available online and provides, in relevant part:

Vehicles Towed When Owner or Operator is Arrested

1.  A vehicle driven by an arrested driver may be released by the arresting officer to:

    1.1. The owner/co-owner of the vehicle; or

    1.2. A licensed driver with the consent of the owner/co-owner.

NOTE: Persons, arrested for driving a vehicle in violation of the Transportation Article, Section §21-902 (DWI), may not release the vehicle they were driving to anyone. The arresting officer may release the vehicle to the owner/co-owner that is not injured, not impaired, has a valid license to drive the class of vehicle, and is present before the Medallion Towing Services vehicle arrives.

\* \* \*

3.  If the arresting officer does not release the vehicle, tow the vehicle to City Yard.

*Towing Procedures Policy 902*, Baltimore Police Dept. 1, 4-5 (Feb. 21, 2017), https://perma.cc/MR7J-TU87.

In briefs addressed to this Court, the parties agree that the detective's understanding of the Policy is inconsistent with the language of the Policy that authorizes a vehicle tow "when the owner or operator is arrested." Because the Policy was not admitted into evidence, we draw no conclusions about it as written or the correctness of the detective's interpretation of it. As we explain later, we confine our analysis to the evidence that *was* admitted, which was the detective's *understanding* of the Policy regarding when a tow is authorized.

[2] The appellant's license was suspended for failing to appear in court under Md. Code Ann., Transp. Art. ("TA") §16-303(i)(1)(i). The maximum potential penalty for driving on a suspended license under this subsection is a $500 fine and 3 points assessed on one's driving record. TA § 16-303(k)(2)(ii); § 16-402(a)(15).

2

to tow the vehicle to teach the appellant a lesson for driving on a suspended license. He testified:

> [I]f I were to issue him those citations, it's going to have a negative impact on him getting his suspended license already taken care of to where you can tow the vehicle. Yes, it's going to cost him $300 or $350 to get that out of the city yard, but it's not going to have a negative impact on him getting his license back right away.
>
> So, therefore, it's still a lesson to be learned that, okay, I cannot drive on a suspended license, because they will tow my car. It's going to cost me this amount of money to get my vehicle back. To where, if I let him take the car without being towed, and I didn't issue him any tickets, there's absolutely no lesson learned at that point.

Before the vehicle was towed, the appellant's mother arrived at the scene and asked the detective to allow her to take the car, which was registered in her name. Despite acknowledging that he had no reason to suspect the vehicle contained evidence of a crime, the detective denied her request to take the car. He explained that he was exercising his "discretion" to impound the vehicle.

The detective conducted an inventory search of the vehicle before it was towed. Inside, he found a firearm and narcotics. As a result, he charged the appellant with various offenses related to possession of narcotics and a firearm in the vehicle.

Thereafter, the appellant moved to suppress this evidence. The only contested issue was whether the detective lawfully seized the car under the inventory search exception to the warrant requirement; the appellant did not challenge the traffic stop or the subsequent search of the vehicle.

At the suppression hearing, the prosecutor argued that the vehicle's impoundment was lawful. He contended that TA § 26-202(a)(3)(iv) authorizes an officer to arrest an

3

individual who is "driving or attempting to drive a motor vehicle while the driver's license or privilege to drive is suspended or revoked." Because driving on a suspended license is an arrestable offense under this statute, and because the detective testified that the Policy authorizes tows for arrestable offenses, the impoundment of the vehicle was constitutional.

Defense counsel cited various United States Supreme Court cases, including *Colorado v. Bertine*, 479 U.S. 367 (1987), for the proposition that the seizure of a vehicle under the inventory search exception is justified only if authorized pursuant to standard criteria and based on something other than suspicion of criminal activity. Defense counsel argued that the departmental policy of towing for arrestable offenses gives officers unbridled discretion to impound a vehicle, a practice prohibited by Supreme Court case law. Accordingly, defense counsel argued that the circumstances did not justify the seizure of the car under the inventory search exception.

The circuit court denied the motion to suppress, relying on the detective's understanding of the departmental policy regarding vehicle tows.[3] The court recounted a passage in *Bertine* that stated that nothing in the relevant Supreme Court cases "prohibits the exercise of police discretion, so long as that discretion is exercised according to standard criteria, which it was in this case, and, on the basis of something other than . . . suspicion of evidence of criminal activity." The court elaborated:

> [I]n this case, what was offered as a basis for the reason the [detective] acted in this way, and [the court] credit[s] his testimony—was that he saw a vehicle

---

[3] The court stated that it had "looked [the Policy] up before online" and was "capable of doing that." However, the record does not indicate that the court based its decision on the language of the Policy, as outlined in n.1 *supra*. Instead, the record indicates that the court relied on the detective's interpretation of what the Policy authorized.

4

that was in violation of the law. He saw an individual . . . who had a [suspended] driver's license. Rather than gum up the works for this individual to perhaps get his license situation straightened out, he decided, [] not to issue a citation on that, but further, so the [appellant] in this case, wouldn't get a plead free [sic] walk would have—he was going to have his car towed.

That is not a[n] exercise of discretion based on suspicion of evidence of criminal activity, so [the court] find[s] that that rule of law issued in *Colorado v. Bertine*, doesn't exclude the police officer's ability in this case to in fact have the vehicle towed. Once [the detective] made that decision, the law allows, if it is part of the standard procedures of a police department for the public good, to search the vehicle.

As mentioned, the appellant entered a conditional plea to possession of a firearm with a nexus to a drug trafficking crime and was sentenced to seven years' incarceration with all but five years suspended. He then noted a timely appeal.

## II.

## STANDARD OF REVIEW

"In reviewing the ruling of the suppression court, we must rely solely upon the record developed at the suppression hearing." *Briscoe v. State*, 422 Md. 384, 396 (2011). "We view the evidence and inferences that may be drawn therefrom in the light most favorable to the party who prevails on the motion, here, the State." *Id.* (internal citation omitted). "We give deference to the first-level factual findings made by the suppression court, and we accept those findings unless shown to be clearly erroneous." *Id.* "We, however, make an independent appraisal of the constitutionality of a search, applying the law to the facts found in each particular case." *Id.* (citation omitted).

5

## III.

## OVERVIEW OF INVENTORY SEARCHES

Searches without a warrant are "presumptively unreasonable." *Henderson v. State*, 416 Md. 125, 148 (2010); *see* U.S. Const. amend. IV ("The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized."). There are, however, recognized exceptions to the warrant requirement, such as a valid inventory search. *Briscoe*, 422 Md. at 397.

The United States Supreme Court's decision in *South Dakota v. Opperman*, 428 U.S. 364 (1976), was and remains the "Fourth Amendment pole star" for law governing the inventory search doctrine. *State v. Paynter*, 234 Md. App. 252, 260–61 (2017). Other Supreme Court cases that followed, *Illinois v. Lafayette*, 462 U.S. 640 (1983), *Colorado v. Bertine*, 479 U.S. 367 (1987), and *Florida v. Wells*, 495 U.S. 1 (1990), further articulated and reaffirmed *Opperman's* view about inventory searches.

"The recurring theme" in these cases "is that an inventory search is normally a non-investigatory community caretaking function." *Paynter*, 234 Md. App. at 267; *see Wilson v. State*, 409 Md. 415, 430 (2009) (explaining that the community caretaking function of law enforcement officers is "an umbrella that encompasses . . . the automobile impoundment/inventory doctrine"); *Duncan v. State*, 281 Md. 247, 256 (1977) ("Inventory searches of automobiles are frequently made pursuant to these 'community caretaking functions.'").

6

The nomenclature "inventory search," when used to describe the exception to the warrant requirement, is somewhat imprecise.

> [A]n inventory "search," in terms of analytic clarity, may not be a "search" within the contemplation of the Fourth Amendment at all. It may not be analytically precise, therefore, to call the inventory an exception to or an exemption from the warrant requirement, because the entire warrant requirement (along with all of its exceptions) relates to criminal investigations and depends upon probable cause. The true inventory, by contrast, has nothing to do with either. It is probably more analytically correct, therefore, to think of the inventory as an instance of the "Fourth Amendment Inapplicable" rather than as an instance of the "Fourth Amendment Satisfied."

*Paynter*, 234 Md. App. at 268 (citing *Opperman*, 428 U.S. at 370 n.6); *see Duncan*, 281 Md. at 257 ("'With respect to noninvestigative police inventories of automobiles lawfully within governmental custody . . . the policies underlying the warrant requirement . . . are inapplicable.'" (quoting *Opperman*, 428 U.S. at 370 n.5)).

The nomenclature is somewhat imprecise in another way. It refers to the "search" itself, but not the prerequisite to it—the seizure. "The impoundment of an automobile is a seizure within the meaning of the Fourth Amendment."[4] *People v. Brown*, 417 P.3d 868, 871 (Colo. App. 2016) (citation omitted). "It is the *legal* impoundment of an automobile which permits the inventory search of the vehicle." *Duncan*, 281 Md. at 256 (emphasis added). Thus, an "inventory search" is constitutional if two requirements are satisfied.

First, the vehicle must be in *lawful* police custody at the time of the search. *Briscoe*, 422 Md. at 397. This requirement refers to the impoundment of the vehicle. *See Brown*,

---

[4] Throughout this Opinion, we refer to "seizure" to include both "impoundment" and "tow," and refer to them interchangeably.

417 P.3d at 871. The second requirement is that the subsequent search be carried out pursuant to "standardized criteria or [an] established routine" established by the law enforcement agency. *Briscoe*, 422 Md. at 397 (quoting *Wells*, 495 U.S. at 4). The State must ensure that the record of the suppression hearing reflects satisfaction of both requirements. *Id.*

The impoundment and the subsequent search are "distinctive processes, which are warranted in different (though frequently overlapping) circumstances." *United States v. Duguay*, 93 F.3d 346, 352 (7th Cir. 1996). "Impoundments by the police may be in furtherance of 'public safety' or 'community caretaking functions,'" completely unrelated to an ongoing criminal investigation. *Id.* (citing *Opperman*, 428 U.S. at 368–69, 370 n.5). "These rationales are distinct from the permissible reasons for conducting a routine inventory of the contents of an impounded vehicle, which are 'to protect an owner's property while it is in the custody of the police, to insure against claims of lost, stolen, or vandalized property, and to guard the police from danger.'" *Id.* (quoting *Bertine*, 479 U.S. at 372); *see also United States v. Arrocha*, 713 F.3d 1159, 1162 (8th Cir. 2013) (explaining that the inventory search doctrine "encompasses distinct police actions"); *Brown*, 417 P.3d at 871 ("[T]he decision to impound a vehicle and the ensuing inventory search are separate processes, both of which 'must meet the strictures of the Fourth Amendment.'" (quoting *Duguay*, 93 F.3d at 351)); *King v. Commonwealth*, 572 S.E.2d 518, 520 (Va. Ct. App. 2002) ("The validity of the impoundment is a question separate from the validity of the subsequent inventory search and must be determined first."); *State v. Gauster*, 752 N.W.2d 496, 502 (Minn. 2008) (explaining that because the act of impoundment "'gives rise to the

8

need for and justification of the inventory [search],' the threshold inquiry when determining the reasonableness of an inventory search is whether the impoundment of the vehicle was proper" (citation omitted)).

We explain these two requirements in further detail.

**A.**

**Lawful Police Custody**

The first requirement implicates whether the decision to impound the vehicle was reasonable in furtherance of community caretaking functions. *See Thompson v. State*, 192 Md. App. 653, 667 (2010) ("[T]he touchstone of our analysis under the Fourth Amendment is always 'the reasonableness in all the circumstances of the particular governmental invasion of a citizen's personal security.'" (citations omitted)); *id.* at 671 (recognizing "the long line of Maryland cases that give police departments authority to take automobiles in custody, 'in furtherance of their community caretaking functions'" (citation omitted)); *U.S. v. Bullette*, 854 F.3d 261, 265 (4th Cir. 2017) (explaining that the first requirement is satisfied "where the circumstances reasonably justified seizure or impoundment"). "Reasonableness depends on a balance between the public interest and the individual's right to personal security free from arbitrary interference by law officers." *Thompson*, 192 Md. App. at 667–68 (citation omitted). In other words, the reasonableness of the vehicle's seizure requires an evaluation of the "totality of the circumstances." *Id.* at 672.

The United States Supreme Court in *Opperman* provides a non-exhaustive list of situations in which the community caretaking function justifies the seizure of the vehicle:

In the interests of public safety and as part of what the Court has called "community caretaking functions," automobiles are frequently taken into police custody. Vehicle accidents present one such occasion. To permit the uninterrupted flow of traffic and in some circumstances to preserve evidence, disabled or damaged vehicles will often be removed from the highways or streets at the behest of police engaged solely in caretaking and traffic-control activities. Police will also frequently remove and impound automobiles which violate parking ordinances and which thereby jeopardize both the public safety and the efficient movement of vehicular traffic. The authority of police to seize and remove from the streets vehicles impeding traffic or threatening public safety and convenience is beyond challenge.

428 U.S. at 368–69 (footnote omitted) (internal citation omitted); *see, e.g.*, *Bullette*, 854 F.3d at 265–66 (stating impoundment constitutes a "reasonable course of action" when the owner of the vehicle abandons it or law enforcement cannot identify the owner, even if law enforcement has alternatives to impounding the vehicle).

Maryland cases have examined whether the decision to impound was reasonable. In *Dixon v. State*, 23 Md. App. 19 (1974), we concluded that the "necessity for impounding the car was not remotely demonstrated." *Id.* at 38.

The [defendant's] car, at the time of arrest, was on the parking lot of the Howard County Courthouse. It was still before noon on a working day. There was no apparent danger to the car or to its contents. The car, in turn, posed no irremediable danger to the flow of traffic. Either the [defendant] himself or one of the officers, within a few feet and within a few seconds, could have safely parked it, locked it and left it.

*Id.* at 38.

In *Duncan v. State*, 281 Md. 247 (1977), the Supreme Court of Maryland held that the vehicle was not lawfully taken into police custody because the impoundment lacked a community caretaking rationale. *Id.* at 259. The evidence established that the automobile was parked on private property, not on a public highway or street, and was not impeding

traffic or threatening public safety and convenience. *Id.* It explained that police had no authority to impound the car "merely because it was parked on private property without permission." *Id.* at 260.

In *Manalansan v. State*, 45 Md. App. 667 (1980), we concluded that the vehicle was not in lawful police custody, and the police's decision to take it into custody was unreasonable. *Id.* at 671. We explained:

> Everything that transpired in this case occurred within the shadow of the Southern Police Station. There is no indication that when the [defendant] was arrested from his automobile that his automobile was not then at rest in a legitimate parking spot. If, arguendo, it was not, there was no showing of why the [defendant] himself or one of the officers could not have moved the automobile, within a few feet and within a few seconds, into a parking space, locked it and left it. The reasonableness of leaving the automobile essentially where it was is all the more prominent in view of the fact that the [defendant] was about to be taken into the station to be booked on a charge of simple assault by spitting. He would have been released on his own recognizance or on nominal bond within a very brief time and would then have been able to return to his car and to drive home. The necessity for impounding the car was not remotely demonstrated. It is simply not reasonable to tow a car away to avoid moving it to the curb, if such minimal movement was indeed necessary.

*Id.* at 671–72.

In contrast, in *Thompson v. State*, 192 Md. App. 653 (2010), we concluded that it was reasonable for the police to impound the vehicle the defendant was driving. The defendant was driving an unregistered vehicle, and did not produce a Maryland driver's license or a driver's license from any other state. *Id.* at 671. The officer was unable to verify the defendant's identity despite checking multiple sources. *Id.* The defendant then produced a number of documents with conflicting VINs for the vehicle. *Id.* In addition, the defendant's passenger left the scene. *Id.* Under these circumstances, the officer was

11

concerned about leaving the vehicle and therefore decided to have it towed from the scene. *Id.* We concluded based on the "totality of the circumstances" that the seizure of the vehicle was reasonable. *Id.* at 672–73.

Similarly, in *Paynter v. State*, 234 Md. App. 252, 276 (2017), we concluded that the requirement of lawful custody was "incontestably satisfied." We explained:

> The stopping officer was on standard highway patrol duty, manning the radar from a fixed position, when he stopped the [defendant] for doing 50 miles per hour in a 30 mile per hour zone. The [defendant] was the only occupant of the car. A radio check revealed that the [defendant's] driver's license had been suspended. The [defendant] himself, therefore, would not have been allowed to drive the car away. In checking the registration status of the vehicle, the officer further learned that the Motor Vehicle Administration had suspended the tags and that there was a pick-up order for them. As a back-up officer testified, when the officers encounter a "pick-up order," they have to "take the tags off the vehicle and we return them to the M.V.A." In this case, no one, therefore, would have been allowed to drive that "untagged" automobile away from the 800 block of Talbot Avenue in Laurel.

*Id.* at 275.

We rejected the defendant's argument that the police were not authorized to tow the car because they did not exhaust all alternatives to towing. *Id.* at 276. We explained that the case law makes clear that such exhaustion of alternatives is not required. *Id.* (citing *United States v. Williams*, 777 F.3d 1013, 1016 (8th Cir. 2015) (explaining that a police department's tow policy may allow some latitude and exercise of judgment by an officer whether to tow after an arrest); and *Arrocha*, 713 F.3d at 1164 (explaining that nothing in the Fourth Amendment requires a police department to allow an arrested person to arrange for another person to pick up his car to avoid impoundment and inventory)).

## B.

## Search Pursuant to Standardized Criteria or Established Routine

The second requirement is that the search itself is carried out pursuant to "standardized criteria or [an] established routine" established by the law enforcement agency. *Briscoe*, 422 Md. at 397 (citation omitted). As the United States Supreme Court in *Opperman* explained,

> When vehicles are impounded, local police departments generally follow a routine practice of securing and inventorying the automobiles' contents. These procedures developed in response to three distinct needs: the protection of the owner's property while it remains in police custody; the protection of the police against claims or disputes over lost or stolen property; and the protection of the police from potential danger[.] The practice has been viewed as essential to respond to incidents of theft or vandalism. In addition, police frequently attempt to determine whether a vehicle has been stolen and thereafter abandoned.

428 U.S. at 369 (internal citations omitted).

The Appellate Court of Maryland emphasized the necessity for evidence of a standard, established police policy for the inventory search itself. We explained:

> [T]he [United States] Supreme Court cases make clear that to ensure that ulterior investigatory motives are not at play[,] an inventory search must at a bare minimum *be a search* of lawfully detained property *carried out by a police officer in accordance with standard policies established by the officer's law enforcement agency*. Without the existence of a standard policy, an officer's actions in *conducting the search* are not sufficiently regulated to assure that *the search* is in furtherance of legitimate police caretaking functions, unrelated to the existence *vel non* of probable cause, and not in furtherance of the officer's own investigatory motives.
>
> * * *
>
> [T]he Supreme Court case law requires that, *for a search* to in fact be a valid inventory search in the eyes of Fourth Amendment law, there must be proof that *the search* was carried out *pursuant to an existing policy regulating police inventory searches*.

13

*Sellman v. State*, 152 Md. App. 1, 21, 23 (2003) (emphases added).

## IV.

## DISCUSSION

The appellant argues that the circuit court erred in denying the motion to suppress. The sole issue on appeal centers on the first requirement of the inventory search exception—whether the vehicle was lawfully in police custody at the time of the search. The appellant and the State agree that the court erred in denying the motion on the ground that the vehicle's impoundment was valid. However, there are slight differences in their rationales.

The appellant's arguments are based on his interpretation of *Bertine v. Colorado*. He contends that the United States Supreme Court in *Bertine* established that the first requirement—whether the vehicle is in lawful policy custody—must be governed by a standardized departmental police policy. He asserts that case law requires that, to justify the impoundment, the evidence must demonstrate that the officer exercised discretion (1) according to standardized criteria, and (2) for reasons related to caretaking functions rather than for investigatory purposes. On this basis, he argues that the evidence did not satisfy either condition.

In its brief, the State did not address whether the law requires the use of standardized criteria to justify impoundment. Instead, it conceded that the seizure of the car was unreasonable because the detective towed it for reasons unrelated to caretaking functions.

For reasons explained below, we agree that the court erred in denying the motion to suppress. In reaching this conclusion, we address the appellant's assertion that the law mandates standardized criteria to justify an officer's seizure of the vehicle under the first requirement of the inventory search exception. We begin by examining *Bertine*.

## A.

### *Colorado v. Bertine*

In *Colorado v. Bertine*, a police officer arrested the defendant for driving his van while under the influence of alcohol. 479 U.S. at 368. After the defendant was taken into custody and before a tow truck arrived to take the van to an impoundment lot, another officer, acting in accordance with local police procedures, inventoried the van's contents, including a closed backpack in which he found various containers holding controlled substances, cocaine paraphernalia, and a large amount of cash. *Id.* at 368–69. *Bertine* primarily addressed the constitutionality of the search of the defendant's van under the second requirement—whether the search was conducted pursuant to standardized criteria––not at issue in the case *sub judice*. *Id.* at 370–71.

However, relevant to the instant case, the *Bertine* Court addressed the defendant's argument that impounding the vehicle was unconstitutional "because departmental regulations gave the police officers discretion to choose between impounding his van and parking and locking it in a public parking place." *Id.* at 375. The Supreme Court rejected the defendant's argument, explaining that:

> Nothing in *Opperman* or *Lafayette* prohibits the exercise of police discretion *so long as that discretion is exercised according to standard criteria and on the basis of something other than suspicion of evidence of criminal activity*.

15

Here, the discretion afforded the Boulder police was exercised in light of standardized criteria, *related to the feasibility and appropriateness of parking and locking a vehicle rather than impounding it.*[7] There was no showing that the police chose to impound Bertine's van in order to investigate suspected criminal activity.

*Id.* at 375–76 (emphases added).

In footnote 7 of the opinion, the majority responded to the dissent's concern about the absence of standardized criteria guiding the officer's decision to impound a vehicle. *Id.* at 376 n.7. The majority stated:

In arguing that the Boulder Police Department procedures set forth no standardized criteria guiding an officer's decision to impound a vehicle, the dissent selectively quotes from the police directive concerning the care and security of vehicles taken into police custody. The dissent fails to mention that *the directive establishes several conditions that must be met before an officer may pursue the park-and-lock alternative.* For example, police may not park and lock the vehicle where there is reasonable risk of damage or vandalism to the vehicle or where the approval of the arrestee cannot be obtained. *Not only do such conditions circumscribe the discretion of individual officers*, but they also protect the vehicle and its contents and minimize claims of property loss.

*Id.* (emphasis added) (internal citation omitted).

The question of whether *Bertine* requires an officer's decision to impound a car to be made pursuant to standardized criteria has led to a split among the circuits. *United States v. Lyle*, 919 F.3d 716, 728 (2d Cir. 2019) (recognizing split among federal circuit courts); *accord United States v. Smith*, 522 F.3d 305, 314 (3d Cir. 2008); *United States v. Sanders*, 796 F.3d 1241, 1247–48 (10th Cir. 2015); *State v. Asboth*, 898 N.W.2d 541, 548–50 (Wis. 2017).

The Seventh, Eighth, Tenth, and D.C. Circuits require that police follow standardized police procedures to justify impoundments. *See United States v. Duguay*, 93

F.3d 346, 351 (7th Cir. 1996) ("Among those criteria which must be standardized are the circumstances in which a car may be impounded."); *United States v. Petty*, 367 F.3d 1009, 1012 (8th Cir. 2004) ("Some degree of 'standardized criteria' or 'established routine' must regulate these police actions . . . to ensure that impoundments and inventory searches are not merely 'a ruse for general rummaging in order to discover incriminating evidence.'" (citation omitted)); *Sanders*, 796 F.3d at 1248 (holding that an impoundment is constitutional "only if justified by both a standardized policy and a reasonable, non-pretextual community-caretaking rationale"); *Olaniyi v. District of Columbia*, 763 F.Supp.2d 70, 105 (D.D.C. 2011) ("In [the D.C. Circuit], a community caretaking impoundment 'must be based on (1) a reasonable standard practice procedure governing decisions on whether to impound vehicles and (2) the police must follow the procedure in the case involved.'"(quoting *Smith*, 522 F.3d at 314 (interpreting *United States v. Proctor*, 489 F.3d 1348, 1353–54 (D.C. Cir. 2007) (holding that, "if a standard impoundment procedure exists, a police officer's failure to adhere thereto is unreasonable and violates the Fourth Amendment.")))).[5]

---

[5] *See also Patty v. State*, 768 So.2d 1126, 1127 (Fla. Dist. Ct. App. 2000) ("[A]n impoundment and inventory search must be conducted according to standardized criteria."); *State v. Weaver*, 900 P.2d 196, 199–200 (Idaho 1995) (stating that *Bertine* requires an officer's discretion to impound be exercised according to standard criteria (citation omitted)); *People v. Ferris*, 9 N.E.3d 1126, 1137 (Ill. App. Ct. 2014) ("There must be a standard police procedure authorizing the towing of the car in the first place."); *Fair v. State*, 627 N.E.2d 427, 433 (Ind. 1993) (requiring that decision to impound is based on caretaking rationale and "was in keeping with established departmental routine or regulation") (citations omitted)); *State v. Huisman*, 544 N.W.2d 433, 437 (Iowa 1996) ("[W]e no longer examine the reasonableness of the officer's decision to impound; we look

17

In contrast, the First, Second, Third, and Fifth Circuits explicitly reject standardized criteria, focusing instead on the reasonableness of vehicle impoundment for community caretaking purposes. *See Lyle*, 919 F.3d at 731 ("While the existence of and an officer's adherence to a standardized criteria may be helpful in evaluating the reasonableness of an impoundment, we decline to adopt a standardized impoundment procedure requirement."); *United States v. McKinnon*, 681 F.3d 203, 208 (5th Cir. 2012) (per curiam) ("Since *Opperman* and *Bertine*, we have focused our inquiry on the reasonableness of the vehicle impoundment for a community caretaking purpose without reference to any standardized criteria."); *Smith*, 522 F.3d at 314 (declining to adopt "the more structured approach . . . requiring that there be standardized police procedures governing impoundments"); *United States v. Coccia*, 446 F.3d 233, 238–39 (1st Cir. 2006) (reading *Bertine* "to indicate that an impoundment decision made pursuant to standardized procedures will most likely, although not necessarily always, satisfy the Fourth Amendment").[6]

---

for the existence of reasonable standardized procedures and a purpose other than the investigation of criminal activity.").

[6] *See also Asboth*, 898 N.W.2d at 550 ("[A]bsence of standard criteria does not by default render a warrantless community caretaker impoundment unconstitutional under the Fourth Amendment reasonableness standard. Nor does law enforcement officers' lack of adherence to standard criteria, if they exist, automatically render such impoundment unconstitutional."); *Brown*, 415 P.3d at 818 (explaining that the *Bertine* Court "clearly did not create a new exception for every seizure authorized by legislative or departmental standardized criteria, as a result of that authorization alone").

**Standard Police Procedure is Not Required to Establish Reasonableness of Caretaking Impoundment**

The appellant claims that *Dixon*, *Thompson*, and *Paynter*, *supra*, make it clear that standardized criteria must be established to demonstrate that a vehicle is in lawful police custody. However, the appellant misinterprets these cases by concentrating on specific passages that address the requirement of a standardized policy in relation to the second requirement of the inventory search exception—the search itself. None of the cases determined the constitutionality of a vehicle's impoundment (the seizure) based on the requirement for or adherence to standardized criteria. In *Paynter*, we stated the two requirements of the inventory search exception; only the second requires a standardized police procedure:

> From the beginning, Maryland recognized that the two key requirements of that new doctrine are 1) that the vehicle be lawfully in police custody and 2) that the inventory be done "pursuant to standard police procedure."

234 Md. App. at 269.

Maryland jurisprudence aligns with the approaches taken by the First, Second, Third, and Fifth Circuits, which emphasize the reasonableness of vehicle impoundment based on the totality of the circumstances. We maintain established Maryland law, which assesses the reasonableness of an impoundment following this standard, rather than adopting a new method that requires a standardized impoundment procedure.

There are sound reasons for not adopting the approach suggested by the appellant. "[S]tandard protocols have limited utility in circumscribing police discretion in the

impoundment context because of the numerous and varied circumstances in which impoundment decisions must be made." *Coccia*, 446 F.3d at 239. In addition, a policy might authorize an unreasonable seizure. *See State v. Rohde*, 852 N.W.2d 260, 264 (Minn. 2014) ("Logically, this question [of whether impoundment is reasonable] is independent of whether the impoundment was authorized under [state] law, because a state statute might authorize an unreasonable search.").

That is not to say that a standard police procedure regarding impoundment, if one exists, should never be considered in the reasonableness analysis. Certainly, "the existence of and an officer's adherence to a standardized criteria may be helpful in evaluating the reasonableness of an impoundment." *Lyle*, 919 F.3d at 731; *see Asboth*, 898 N.W.2d at 550–51 (explaining that a court "may consider the existence of, and officers' adherence to, standard criteria as a relevant factor when assessing the reasonableness of a community caretaker seizure"). For instance, "adherence to sufficiently detailed standard criteria can enhance the reasonableness of an impoundment by limiting the exercise of discretion and encouraging compliant officers to identify and pursue the least-intrusive means of performing the community caretaker function." *Asboth*, 898 N.W.2d at 550.

Trial courts should be mindful that the existence of and the officer's adherence to a police impoundment procedure does not automatically mean that the seizure is reasonable. *Miranda v. City of Cornelius*, 429 F.3d 858, 864–65 (9th Cir. 2005) ("[T]he decision to impound pursuant to the authority of a city ordinance and state statute does not, in and of itself, determine the reasonableness of the seizure under the Fourth Amendment."); *see Coccia*, 446 F.3d at 239 (explaining that "it is inappropriate for the existence of (and

20

adherence to) standard procedures to be the sine qua non of a reasonable impound decision"); *Rohde*, 852 N.W.2d at 264 (explaining that the "focus on whether the impoundment was authorized by [state] law is misplaced, because the real question in this case is whether the impoundment was reasonable *under the Fourth Amendment*"); *People v. Williams*, 52 Cal.Rptr.3d 162, 167–68 (Cal. Ct. App. 2006) (clarifying that statute authorizing impoundment "does not . . . end the inquiry"). At best, the policy may constitute standardized criteria to guide an officer's discretion to impound. *See Williams*, 52 Cal.Rptr.3d at 168. "[T]he adoption of a standardized impoundment procedure merely supplies a methodology by which reasonableness can be judged and tends to ensure that the police will not make arbitrary decisions in determining which vehicles to impound." *Smith*, 522 F.3d at 312. "Impoundment must still serve a community caretaking function." *Williams*, 52 Cal.Rptr.3d at 168.

A vehicle impoundment may be considered unreasonable if it violates a relevant departmental policy. We use the term "may" because there may be instances in which an officer has a valid, non-investigatory reason to impound a car, even if such an action is prohibited under the policy. *See Coccia*, 446 F.3d at 239 ("'Where . . . the police have solid, non-investigatory reasons for impounding a car, there is no need for them to show that they followed explicit criteria in deciding to impound, as long as the decision was reasonable.'" (citation omitted)); *Smith*, 522 F.3d at 312 ("[A] decision to impound a vehicle contrary to a standardized procedure or even in the absence of a standardized procedure should not be a per se violation of the Fourth Amendment."); *Asboth*, 898 N.W.2d at 550 ("[L]aw

21

enforcement officers' lack of adherence to standard criteria, if they exist, [does not] automatically render such impoundments unconstitutional.").

For the reasons stated, we hold that a standard police procedure is not required to justify impoundment under the first requirement of the inventory search exception to the warrant requirement. To the extent a vehicle is impounded pursuant to a police procedure, the existence of and adherence to standardized criteria may be considered as a factor in assessing the reasonableness of a caretaking impoundment.

## C.

### The Impoundment of the Vehicle was Unreasonable

In the instant case, the Policy was not admitted into evidence. We are mindful that, while the Policy existed and may even have been known to the trial judge (*see* n.1, 3 *supra*), we must base our decision on the evidence actually presented at the suppression hearing. *See Sellman*, 152 Md. App. at 21. The only evidence regarding the Baltimore City Police Department's protocol for authorizing tows was the detective's understanding that an officer is authorized, in his discretion, to impound a vehicle when the driver commits an "arrestable offense."

The circuit court relied on *Bertine* to conclude that the car's impoundment was reasonable under the Fourth Amendment because the detective towed it pursuant to this protocol and for a reason other than suspicion of criminal activity. While it is true that the *Bertine* Court stated, "Nothing in *Opperman* or *Lafayette* prohibits the exercise of police discretion so long as that discretion is exercised according to standard criteria and on the basis of something other than suspicion of evidence of criminal activity," it did not stop

22

there. 479 U.S. at 375. It explained that "the discretion afforded the [city] police was exercised in light of standardized criteria, related to the feasibility and appropriateness of parking and locking a vehicle rather than impounding it." *Id.* at 375–76. The *Bertine* Court clarified in footnote 7 that "the directive establishes several conditions that must be met before an officer may pursue the park-and-lock alternative" and that these conditions "circumscribe the discretion of individual officers" and "protect the vehicle and its contents and minimize claims of property loss." *Id.* at 376 n.7.

> As the Supreme Court of Colorado, interpreting *Bertine*, aptly explained:

> The [*Bertine*] Court did not uphold the seizure simply because in exercising discretion, the officers complied with department policy, but rather for the reason that the policy reasonably circumscribed the discretion of the individual officers by imposing sufficient limitations on their discretion to use the alternate procedure of parking and locking.

*Brown*, 415 P.3d at 818.

Here, the protocol, as Detective Coursey understood it, gave him unfettered discretion to impound vehicles for "anything that's an arrestable offense," such as driving on a suspended license. In contrast to the directive upheld by the *Bertine* Court, which set forth "several conditions that must be met" before alternatives to impoundment could be pursued, 479 U.S. at 376 n.7, there was no evidence that the protocol here limited officer discretion in deciding whether to impound a vehicle or leave it at the scene. In other words, the authority to tow a vehicle whenever a driver commits an "arrestable offense" does not adequately restrict the individual officers' discretion to impound. The lack of constraints on an officer's exercise of discretion on the decision to tow is a factor that undermines the reasonableness of the impoundment.

Even if we conclude that this protocol adequately restricted an officer's discretion and that the detective followed it, that does not settle the issue of whether the vehicle's impoundment was reasonable under the Fourth Amendment. The impoundment must still be justified by a community caretaking rationale.

In either case, the impoundment did not serve a community caretaking function. There was no indication that the detective towed the car to prevent it from "impeding traffic or threatening public safety and convenience," as noted in *Opperman*, 428 U.S. at 369, nor was there evidence that the vehicle was at risk of vandalism or theft if left in its location. Additionally, there was no evidence showing that the appellant was unable to arrange for the vehicle's custody or removal to alleviate these concerns. *See* 3 Wayne LaFave, Search & Seizure: A Treatise on the Fourth Amendment § 7.3(c) (6th ed. 2025) ("[I]f the driver is only ticketed but cannot himself operate the car because of an expired license, impoundment of the vehicle is improper unless the driver is unable to provide for its custody or removal.") (internal quotation marks omitted).

Instead, the detective admitted that he impounded the vehicle not for a caretaking purpose, but to teach the appellant a lesson and deter him from driving on a suspended license. While the justification for the impoundment must be "on the basis of something other than suspicion of evidence of criminal activity," *Bertine*, 479 U.S. at 375, "the community caretaking exception to the probable cause and warrant requirements of the Fourth Amendment definitionally cannot support seizures on the basis of suspicion that the driver has committed, is committing, or will commit a crime." *Brown*, 415 P.3d at 820 (citing *Opperman*, 428 U.S. at 370 n.5); *see also Miranda*, 429 F.3d at 866 (rejecting the

24

government's argument that impoundment satisfied the caretaking function by deterring the driver from repeating illegal activity in the future because "[s]uch a rationale would expand the authority of the police to impound regardless of the violation, instead of limiting officers' discretion to ensure that they act consistently with their role of 'caretaker of the streets'" (citation omitted)); *United States v. Nickleberry*, 164 F. Supp.3d 1322, 1329 (D. Utah 2016) ("[L]aw enforcement's claim that they were entitled to seize and search [the driver's] car without a warrant in order to prevent any possible future instances of driving without insurance smacks of pretext and is insufficient to overcome the warrant requirement of the Fourth Amendment."); *People v. Torres*, 116 Cal.Rptr.3d 48, 61 (Cal. Ct. App. 2010) ("the impounding of a vehicle driven by an unlicensed driver must be supported by some community caretaking function other than temporarily depriving the driver of the use of the vehicle"); *State v. Gonzales*, 236 P.3d 834, 840 (Ore. 2010) ("To the extent that deterring unlicensed drivers from using the roads can be viewed as a public safety matter independent of law enforcement, we reject the state's suggestion that leaving the car accessible to defendant would have created a threat to public safety.").

For the reasons stated, the impoundment of the vehicle was unreasonable under the Fourth Amendment. Thus, the car was not in lawful police custody when it was searched, in contravention of the first requirement of the inventory search exception to the warrant requirement. Accordingly, the circuit court erred in denying the appellant's motion to suppress.

**ORDER OF THE CIRCUIT COURT FOR BALTIMORE CITY DENYING THE MOTION TO SUPPRESS REVERSED; CASE REMANDED FOR FURTHER PROCEEDINGS NOT INCONSISTENT WITH THIS OPINION. MAYOR AND CITY COUNCIL OF BALTIMORE TO PAY COSTS.**